COUNTY OF McCOOK et al, Appellants, v. FIRST NATIONAL BANK OF SALEM, SOUTH DAKOTA, Respondent.

(171 N. W. 818).

(File No. 4456.   Opinion filed April 18, 1919.)

1.  **Depositories—County Depository Bank, Trust Fund, Bank's Presumed Knowledge—Fraudulent Checks, Payment Of, Effect—Statute.**

    Under Code 1919, Sec. 6888, (Pol. Code 1903, Sec. 349 as amended by Laws 1915 Ch. 159,) providing for deposit of county funds in certain banks, subject to payment on check of county treasurer countersigned by county auditor, held, that moneys so deposited in bank is known by the bank to constitute a trust fund, and to pay it out on checks known to be fraudulent or under circumstances sufficient to put a prudent person upon inquiry as to purpose for which the money was being used would render bank liable to county for any loss it might have suffered thereby.

2.  **Same—County Funds On Statutory Bank Deposit—Treasurer's, Re Auditor's, Duties, Non-interchangeable—Public Policy.**

    The respective duties of county treasurer and county auditor relative to issuance of checks for disbursement of county funds deposited in bank pursuant to Pol. Code, Sec. 349, as amended by Laws 1915, Ch. 159, Code 1919, Sec. 6888, are so incompatible, that it is against public policy, if not contrary to law, for either officer to attempt to perform the duties of the other; the purpose of the law being to require them to act as a check upon each other.

3.  **Same—Payment of Checks, Auditor Signing Treasurer's Name—Non-negligence of Treasurer, Effect Re Bank's Liability.**

    In a suit by county and by county auditor's surety, against a statutory depository bank, to recover the amount of funds paid out by defendant upon checks purporting to bear county treasurer's signature and that of county auditor, the latter having signed the former's name thereto; the suit involving Code 1919, Sec. 6888, (Pol. Code 1903, Sec. 349, as amended by Laws 1915, Ch. 159), it not appearing that the negligence of the county treasurer in permitting auditor to sign the former's name to the checks, caused the loss, or that treasurer had knowledge that any of the checks that were being issued were fraudulent, the loss having been occasioned through a system of filing bogus and fictitious claims against the county

and by county commissioners allowed as genuine, warrants being issued in payment thereof, which warrants were the subject of payment through said checks; such checks after payment having been duly ordered and approved by county board; the defalutation not having been discovered until long after auditor's term of office had expired; **held,** that defendant bank was not responsible for loss of the county funds, and neither plaintiff is entitled to recover; this, conceding that defendant was negligent in cashing the checks it knew had been illegally issued, such negligence however not having even remotely caused the loss; that when such claims were allowed and warrants issued and presented, to treasurer for payment, it was his duty, in absence of knowledge to contrary, to issue checks against county funds in payment thereof.

Appeal from Circuit Court, Minnehaha County. HON. JOSEPH W. JONES, Judge.

Action by the County of McCook, and the American Surety Company of New York, a corporation, against the First National Bank of Salem, South Dakota, to recover the amount of moneys paid out of county statutory deposit by defendant bank on alleged fraudulent and illegally signed checks. From a judgment for defendant, and from an order denying a new trial, plaintiffs appeal. Affirmed.

*E. H. Wilson, Bailey & Voorhees,* and *P. W. Scanlan,* for Appellants.

*Horner, Martens & Goldsmith,* for Respondent.

(2) Under point three, Appellants submitted that:

The defendant by accepting the deposit of the county pursuant to statute, entered into a contract with it to keep the funds deposited according to law, and not to allow the same to leave its possession except under a check signed by county treasurer *and no other person,* and countersigned by county auditor; and cited: 23 Am. and Eng. Enc. of Law, 2nd Ed. 365.

POLLEY, J. During the period of time between the first Monday in March, 1911, and the first Monday in March, 1915, the defendant, First National Bank of Salem, was one of the regularly qualified depositaries of the county funds of McCook county. Such funds were deposited in the name of the county treasurer, and, under the provisions of section 349, Pol. Code, since amended by chapter 159, Laws of 1915, and carried into the Code of 1919 as section 6888, could be paid out only upon

checks signed by the county treasurer and countersigned by the county auditor. During said period of time an arrangement existed between the auditor and the treasurer, whereby the auditor was authorized to sign the treasurer's name to checks as treasurer and then to countersign them as auditor. It was also the custom in said offices to permit the various employees, in both offices, to sign the treasurer's name to checks as treasurer and to countersign them with the auditor's name as auditor. The legitimate claims against the county, were paid by checks issued in this manner. This practice prevailed, not only during the period of time above mentioned, but both before and after said time. This condition of affairs was known to the defendant, and with such knowledge, it made a practice of honoring checks and paying out the county funds on checks thus indiscriminately signed. During the said period of time, the auditor issued a large number of fraudulent checks upon the various depositaries of the county, aggregating in all nearly $4,000, those against defendant bank aggregating $1,583, payable to himself, and appropriated the proceeds to his own use.

The plaintiff American Surety Company was surety on the auditor's bond. The auditor's total shortage exceeded the amount of the bond, but, when such shortage was discovered, said company reimbursed the county to the extent of its liability on the bond. Then, claiming to have become subrogated to the rights of the county to the extent of the amount it had paid to the county on the auditor's bond, said company joined the county in this action to recover the said $1,583 from the defendant; the county, of course, seeking to recover the amount that had not been paid by the surety company, and the surety company seeking to recover the amount it had paid the county.

Plaintiffs base their right of recovery solely upon the ground that defendant paid out the county's money on checks that it knew had not been signed and countersigned by the treasurer and the auditor in the manner required by law. The trial court held that the defendant was not liable, and entered judgment dismissing the action. From such judgment plaintiffs appeal.

Numerous questions of practice are presented on the briefs, but we prefer to pass these questions and decide the case on its merits.

[1] The money deposited in the bank by the county treasurer was known by the bank to constitute a trust fund, and to pay it out on checks known to be fraudulent or under circumstances sufficient to put a prudent person upon inquiry as to the purpose for which such money was being used would have rendered the bank liable to the county for any loss it might have suffered thereby. But it is not claimed that the bank had knowledge that any of the checks were for fraudulent purposes, nor is it claimed that the fraudulent checks were issued in a different manner, or were different in appearance, from the checks that were being issued in payment of legitimate claims against the county.

[2] The respective duties of the county treasurer and county auditor relative to the issuance of checks for the disbursement of the county funds are so incompatible that it is against public policy, if not positively contrary to law, for either of them to attempt to perform the duties of the other. The purpose of the law is to require them to act as a check upon each other in the matter of paying out county money, and to permit either of them to perform the duties of the other would be to thwart the purpose of the law. But it was not the negligence of the treasurer in permitting the auditor to sign the treasurer's name to checks that caused the loss. The bank might have been justified in refusing to honor checks signed in the manner the checks in question were signed; but, had it refused to honor such checks and insisted upon having them properly signed, there is no reason to believe that the treasurer would not have signed them. The treasurer had no knowledge that any of the checks that were being issued were fraudulent, and his signature would not have prevented the fraud. The loss was occasioned through a system of filing bogus and fictitious claims against the county. Whether such claims were originally filed by the auditor personally, or filed by some third party and afterward assigned to the auditor, does not appear from the record; but they were presented to the board of county commissioners as genuine claims against the county and, by the board, allowed and warrants issued against the county in payment thereof. Such warrants were then presented to the treasurer for payment, and paid in the manner above set out. At the end of each month the defendant bank returned to the treasurer the checks,

including those fraudulently issued, that had been drawn against the county funds and cashed by defendant during said month. Such checks were then inspected, audited, and approved by the board of county commissioners, and, by said board, certified to be correct. It does not appear from the record just when the defalcations were discovered, but it was not until more than a year after the auditor's term of office had expired.

[3] Under the foregoing circumstances, we do not believe that the defendant should be held responsible for the loss of the county funds, or that either of the plaintiffs is entitled to recover. It may be conceded that defendant was negligent in cashing the checks that it knew had been irregularly issued, and it may be conceded that it would have been liable to the county had such negligence caused the loss; but such negligence did not, even remotely, cause the loss. Whether the county commissioners were careless or negligent in auditing and allowing the bogus claims against the county it is not necessary to determine. But when such claims were allowed, and warrants issued and presented to the treasurer for payment, it was the duty of the treasurer, in the absence of any knowledge to the contrary, to issue checks against the county funds in payment thereof. The case of Chapman v. Inhabitants of Limerick, 56 Me. 390, cited by the appellants in their brief, is in no sense analogous to this case, and what is said by the court in that case has no application to the facts in this case.

As the loss suffered by the county was not occasioned by the negligence or dereliction of duty on the part of the defendant, it should not be held liable.

The judgment appealed from is affirmed.